UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

RANDALL MILLS,

    Plaintiff,

v.

WEAKLEY E. BARNARD, et al.,

    Defendants.

No. 1:14-cv-150
Senior Judge Haynes
Magistrate Judge Bryant
**Jury Demand**

## MEMORANDUM AND ORDER

Presently pending are two related discovery motions: the Plaintiff's motion to compel (Doc. 34) and Interested Party Bonnie Hommrich's motion to quash (Doc. 42). For the reasons that follow, the motion to compel (Doc. 34) is **GRANTED** in part and **DENIED** in part, and the motion to quash (Doc. 42) is **DENIED** as premature and without prejudice.

### I. STATEMENT OF THE CASE

In 1999, Plaintiff Randall Mills was indicted for sexually contacting, raping, and providing drugs to a minor[1] in 1999. (Doc. 1, pp. 6, 8 ¶¶ 26-27, 38). He was convicted in 2000. (Doc. 1, pp. 1, 10-11 ¶¶ 1, 54). After a lengthy appeals process, the Plaintiff's convictions were invalidated, and the Plaintiff was removed from the sex offender registry. (Doc. 1, pp. 2, 15 ¶¶ 1, 81). He now brings suit against the Defendants for wrongfully concealing exculpatory evidence and conspiring to falsely maintain the Plaintiff's guilt. (Doc. 1, p. 2 ¶ 1). The named defendants include Assistant District Attorney Weakley E. Barnard, Tennessee Bureau of Investigation ("TBI") agent Sharon Jenkins, TBI Director Mark Gwyn, Lewisburg Police Department investigator Beth Rhoton, Marshall County, and the City of Lewisburg ("Lewisburg"). (Doc. 1, pp. 2-3 ¶¶ 3-8). He brings claims under 42 U.S.C. §§ 1981, 1983, 1985 for violations of the First,

---
[1] The minor, CM, has since reached the age of majority. (Doc. 38, p. 1 n.1).

1

Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution, and a state law claim of false imprisonment. (Doc. 1, pp. 17-21 ¶¶ 90-105). The Defendants' motions to dismiss are currently pending before the District Judge. (Docs. 6, 13, 16, 18).

In February 2016, the Plaintiff moved to compel Defendants Rhoton, Barnard, and Lewisburg to produce certain investigatory records. (Doc. 34). The Defendants opposed this motion, explaining that the materials requested are protected by confidentiality laws. (Docs. 36, 37, 38). The Plaintiff replied on March 9, 2016. (Doc. 41). Attached to the Plaintiff's reply was a draft subpoena addressed to Interested Party Bonnie Hommrich, Commissioner of the Tennessee Department of Children's Services ("DCS"). (Doc. 41-1). Commissioner Hommrich moved to quash the subpoena. (Doc. 42). The Plaintiff responded to the motion to quash and filed a redacted records release which is presumably signed by CM. (Docs. 44, 44-1). Defendant Lewisburg replied to the Plaintiff's response to the motion to quash. (Doc. 50). These discovery motions are ripe for resolution.

## II.    MOTION TO COMPEL

The Plaintiff seeks the following records from Defendants Rhoton, Barnard, and Lewisburg: (1) records regarding the investigation of CM's criminal allegations; (2) all records of communications that reference Randy Mills or CM, or any internal case label used to denote CM's case, sent to or from Defendant Barnard, Defendant Barnard's agents, or Lewisburg Police staff since 1999; (3) records related to prior investigations of sexual abuse alleged by CM; (4) records of communications between Lewisburg Police staff, Defendant Barnard or any agent of his office, Defendant Jenkins or any agent of the TBI, or Jack Dearing who served as the Plaintiff's public defender; and (5) Defendant Barnard's full, unaltered case file. (Doc. 34). The Plaintiff believes these files will reveal that the Defendants possessed exculpatory evidence and

should have doubted CM's claims and continued to investigate the charges against the Plaintiff. (Doc. 35, p. 2). As the Plaintiff is seeking to determine the scope of the information possessed by the Defendants, the Plaintiff requested the information from these particular parties instead of the original document holders. (Doc. 41, pp. 3, 4 n.2).

The Defendants object to the production of these records, stating that the documents requested contain confidential medical, mental health, and DCS records and that disclosure of these documents without a court order could subject the Defendants to criminal penalties. (Doc. 35, pp. 4-5, 8) (Doc. 37) (Doc. 38, p. 2).[2] Initially, Defendant Lewisburg agreed to produce the requested information once the Court entered a protective order and CM executed a waiver. (Doc. 35, pp. 4-5). At present, the Defendants take the position that CM cannot waive confidentiality of the DCS records and that disclosure of these records requires a court order, not a discovery request. (Doc. 38, pp. 3-4). As to the second request listed above, Defendant Lewisburg objected that the request was overly broad and unduly burdensome and may include communications protected by the attorney-client privilege. (Doc. 35, p. 4). Additionally, Defendant Lewisburg objected that the fourth request was overly broad and unduly burdensome as no identifying time frame or incident was specified. (Doc. 35, p. 5). These objections are addressed in turn.

## A. LEGAL STANDARD

Parties enjoy a broad scope of discovery in civil actions brought in federal court. As amended, Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of

---

[2] Defendant Barnard initially agreed to permit the Plaintiff to inspect and copy Defendant Barnard's file. (Doc. 35, pp. 7-8). Upon receiving Defendant Lewisburg's confidentiality objections, counsel for Defendant Barnard sought to redact Defendant Barnard's file prior to inspection. (Doc. 35, p. 8). The parties mutually agreed to stay review of Defendant Barnard's file while the Court rules on the instant motion to compel. (Doc. 35, p. 8). Additionally, Defendant Barnard takes the position that disclosure of his file is unnecessary based on his prosecutorial immunity. (Doc. 37, p. 2). Defendant Barnard's motion to dismiss is, in part, based on this prosecutorial immunity argument. (Doc. 13). That issue is currently pending before the District Judge.

nonprivileged matters that are relevant to a party's claims or defenses and are proportional to the needs of the particular case. However, the court must limit the frequency or extent of discovery sought if the court determines that the information requested is outside the scope of discovery set forth in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii). Should a party fail to produce documents or permit inspection of documents as required by Rule 34 of the Federal Rules of Civil Procedure, the requesting party may seek a court order compelling production or inspection. Fed. R. Civ. P. 37(a)(3)(B)(iv); Local Rule 37.01(b).

**B. ANALYSIS**

    **1. PRODUCTION OF CM'S MEDICAL RECORDS**

Defendants Rhoton and Lewisburg objected to the production of CM's medical and mental health records and thoroughly briefed the various statutes protecting this information from public disclosure. (Doc. 38, pp. 5-8, 11-12). At the time the Defendants submitted these objections, CM had not executed a waiver authorizing the disclosure of her medical records. (Doc. 38, p. 5). CM subsequently executed a waiver in which she "authorize[d] the release of any and all records related to [her] criminal allegations against Randall Mills to be disclosed to the parties and attorneys in" this lawsuit. (Doc. 44-1, p. 1 ¶ 2). CM declared that she intended to "waive any rights created by Tennessee, federal, or local laws that limit the disclosure of particular records, such as medical records and [DCS] records" subject to a protective order. (Doc. 44-1, pp. 1-2 ¶¶ 3-4). An agreed protective order was entered on April 5, 2016. (Doc. 48). Following receipt of CM's waiver, Defendant Lewisburg agreed to produce the medical records in its possession. (Doc. 50, p. 4). Production of these medical records must be completed no later than **fourteen (14) days** from entry of this order.

## 2. PRODUCTION OF DCS RECORDS

The Defendants state that the documents requested contain confidential DCS records. Tennessee law strictly regulates access to and disclosure of reports of child abuse and information related to such reports. *See* Tenn. Code Ann. §§ 37-1-409; 37-1-612; 37-5-107. Though state law permits disclosure of these records in limited instances, "production to individuals accused of child sexual abuse is not among the exceptions." *State v. Biggs*, 218 S.W.3d 643, 662 (Tenn. Crim. App. 2006) (citing Tenn. Code Ann. § 37-1-612(b)(1)-(7); *State v. Gibson*, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); *State v. Clabo*, 905 S.W.2d 197, 201 (Tenn. Crim. App. 1995)); *see also Farley v. Farley*, 952 F. Supp. 1232, 1242 (M.D. Tenn. 1997) ("This Court has no authority *under state law* to order production of DCS records and their dissemination in the discovery and trial phases of federal civil rights litigation.") (emphasis added).

The inquiry does not end there, however. As this Court has previously recognized, "in an action alleging violation of constitutional rights by an employee or agent of a governmental agency, the state interests in confidentiality of child abuse or neglect investigations must yield to the federal interests in securing evidence in federal civil rights litigation." *Grummons v. Williamson Cty. Bd. of Educ.*, No. 3:13-1076, 2014 WL 1491092, at *3 (M.D. Tenn. Apr. 15, 2014). This analysis begins with a discussion of *Farley v. Farley*, 952 F. Supp. 1232 (M.D. Tenn. 1997), in which the Court thoroughly analyzed the application of this state law privilege to federal civil rights lawsuits. The Court first noted that "[t]here is no constitutional inhibition to the abrogation of privileges arising under state law when a matter is heard by a federal tribunal." *Farley*, 952 F. Supp. at 1235 (citation omitted). Rather, claims of privilege in suits arising under federal law, such as this suit, are generally governed by federal common law and may be

supplemented by state law privilege where appropriate. *See id.* at 1235-36 (quoting Fed. R. Evid. 501).

The Court noted that "[i]n federal civil rights actions, most courts that have taken up the issue of state privileges have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally-guaranteed rights." *Id.* at 1236 (citations omitted). Finding that the state of Tennessee has a particularly strong public policy interest which justifies withholding child abuse reports and related information—protecting the privacy of families afflicted by child abuse and protecting the identities of individual who report child abuse—the Court found that disclosure of this confidential material "must strike a balance between Plaintiff's ability to prosecute her civil rights claim and the state's interest in ensuring that child abuse is reported, investigated, and resolved without undue fear of retribution or recrimination." *Id.* (citations omitted). Analyzing somewhat similar cases, the Court observed that the cases generally recommended considering the following factors:

> (1) the likelihood that disclosure of confidential information will discourage citizens from giving the government information;
>
> (2) the extent to which disclosure will thwart or undercut significant regulatory processes;
>
> (3) the extent to which state authorities have already waived the privilege that they assert;
>
> (4) the federal policies prioritizing and facilitating full development of the facts in federal litigation; and
>
> (5) the plaintiff's need for disclosure.

*Id.* at 1237-38 (citations omitted).

Turning to the first factor, the Magistrate Judge finds that any risk of a chilling effect from the disclosure of CM's DCS records will be minimized by redacting the identifying information of the reporter or reporters and by disclosing these records subject to the parties'

protective order. *See id.* at 1240. As is provided in the protective order, a knowing violation of the order may subject the violator to punishment for contempt. (Doc. 48, p. 4 ¶ 8).

Next, it has not been shown that disclosure of CM's DCS records involving the Plaintiff will interfere with any ongoing agency investigations, especially as the conduct at issue occurred in 1999 and CM is no longer a minor.

As to the third factor, the Plaintiff has not identified any state waiver of privilege, and the Magistrate Judge finds none. This factor weighs against disclosure.

The fourth and fifth factors provide persuasive grounds for disclosure. As was explained in *Farley*, "the scheme of rules mandating wide-ranging discovery [a]nd admission of evidence serves a fundamental public interest," and "[i]t is therefore of paramount importance that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules . . . particularly . . . in federal civil rights actions where the vindication of constitutional rights is often at stake." *Id.* at 1239.

The Plaintiff's complaint alleges serious breaches of his federal civil rights by state actors leading to his wrongful incarceration for eleven years and registration as a sex offender for several years. Through discovery, the Plaintiff seeks to establish that the information possessed by the Defendants at the time the Plaintiff was charged contained exculpatory evidence, cast doubt on CM's allegations, and required further investigation before charging the Plaintiff. The DCS records in the Defendants' possession involving the Plaintiff and CM are highly relevant to these claims. The same cannot be comfortably said for the Plaintiff's general request for records related to any prior investigations of sexual abuse alleged by CM. (Doc. 35, pp. 4, 8). This request raises the possibility of disclosing DCS records involving unrelated incidents, if any,

which are much less relevant to the Plaintiff's claims than the DCS records involving the Plaintiff and CM.

As this Court has found, "[t]he confidentiality granted child abuse records under Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices." *Id.* at 1240; *see also Grummons*, No. 3:13-1076, 2014 WL 1491092, at *3; *John B. v. Goetz*, 879 F. Supp. 2d 787, 903 (M.D. Tenn. 2010). Notably, the Plaintiff is seeking scrutiny of the actions taken by a prosecutor and various state and municipal investigators, not the DCS. Regardless, the rationale given in *Farley* applies with equal force as "governmental compliance with federally-guaranteed civil rights" is being scrutinized. *Grummons*, No. 3:13-1076, 2014 WL 1491092, at *3 (quoting *Farley*, 952 F. Supp. at 1240).[3]

Applying these factors to the case at hand, the Magistrate Judge concludes that the balance weighs in favor of disclosing CM's DCS records involving the Plaintiff subject to the following restrictions. The identifying information of the reporter or reporters shall be redacted, and the records shall be disclosed pursuant to the parties' protective order (Doc. 48). Recognizing that this Court must diligently strive to maintain a balance between the state's interest in the safety of children and a party's ability to prosecute his or her civil rights claims, the Magistrate Judge finds that any DCS records of child abuse alleged by CM against individuals other than the Plaintiff are too remote to justify disclosure at this junction. Subject to these conditions, the Defendants are **ORDERED** to produce the requested DCS records by no later than **fourteen (14) days** after entry of this order.

---

[3] This is not to say that the Defendants here are attempting to hide behind a shield of confidentiality. As the medical, mental health, and DCS records sought are protected by a variety of confidentiality laws, the Defendants were correct to object to their production absent a court order, or a confidentiality waiver in the case of CM's medical and mental health records.

### 3. OBJECTIONS NOT ADDRESSED IN THE BRIEFS

Defendants Rhoton and Lewisburg objected that the second listed request for production which sought "all records of communications that reference Randy Mills or [CM], or any internal case label used to denote [CM]'s case, sent to or from Lewisburg Police staff since 1999" was overly broad and unduly burdensome and potentially sought materials protected by the attorney-client privilege. (Doc. 35, p. 4). Absent development of this objection, the Magistrate Judge fails to see how this request for production is overly broad and unduly burdensome, and this objection is overruled. As for the suggestion that the materials requested may be covered by the attorney-client privilege, counsel are directed to follow the procedures set forth in Rule 26(b)(5) of the Federal Rules of Civil Procedure.

Additionally, Defendants Rhoton and Lewisburg objected that the fourth listed request for production which sought "any records of communications between Lewisburg Police staff and Weakley E. Barnard or any agent of his office, Sharon Jenkins or any agent of the [TBI], or Jack Dearing" was overly broad and unduly burdensome because it did not identify a particular time frame or incident. (Doc. 35, p. 5). This objection has merit. As it is currently worded, the request for production is far too broad. Insofar as the Plaintiff seeks to compel a response to this overly broad request, the motion is **DENIED**, and the request is narrowed. Defendants Rhoton and Lewisburg need only respond to this request as it pertains to the relevant time frame and incident at issue in this case.

### III. MOTION TO QUASH

Commissioner Hommrich moved to quash a proposed subpoena attached as an exhibit to one of the Plaintiff's filings. (Doc. 42). The Plaintiff states that the proposed subpoena has not

been served. (Doc. 44, p. 1). Seeing as there is no subpoena to quash at this time, the motion to quash is **DENIED** as premature and without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion to compel (Doc. 34) is **GRANTED** in part and **DENIED** in part, and Commissioner Hommrich's motion to quash (Doc. 42) is **DENIED** as premature and without prejudice. Subject to the limitations provided herein, the Defendants shall respond to the Plaintiff's request for production within **fourteen (14) days** from entry of this order.

It is so **ORDERED**.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge